Justice Thomas,
dissenting.
When Angel Raich and Diane Monson challenged the application of the Controlled Substances Act (CSA), 21 U. S. C. §801 et seq., to their purely intrastate possession of marijuana for medical use as authorized under California law, a majority of this Court (a mere seven months ago) determined that the CSA effectively invalidated California’s law because “the CSA is a comprehensive regulatory regime specifically designed to regulate which controlled substances can be utilized for medicinal purposes, and in what manner” Gonzales v. Raich, 545 U. S. 1, 27 (2005) (emphasis added). The majority employed unambiguous language, concluding that the “manner” in which controlled substances can be utilized “for medicinal purposes” is one of the “core activities regulated by the CSA.” Id., at 28. And, it described the CSA as “creating a comprehensive framework for regulating the production, distribution, and possession of . . . ‘controlled substances,’ ” including those substances that “ ‘have a useful and legitimate medical purpose,’ ” in order to “foster the beneficial use of those medications” and “to prevent their misuse.” Id., at 24.
Today the majority beats a hasty retreat from these conclusions. Confronted with a regulation that broadly re *300 quires all prescriptions to be issued for a “legitimate medical purpose,” 21 CFR § 1306.04(a) (2005), a regulation recognized in Raich as part of the Federal Government’s “closed . . . system” for regulating the “manner” in “which controlled substances can be utilized for medicinal purposes,” 545 U. S., at 13,27, the majority rejects the Attorney General’s admittedly “at least reasonable,” ante, at 272, determination that administering controlled substances to facilitate a patient’s death is not a “ ‘legitimate medical purpose.’ ” The majority does so based on its conclusion that the CSA is only concerned with the regulation of “medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood.” Ante, at 270. In other words, in stark contrast to Raich’s broad conclusions about the scope of the CSA as it pertains to the medicinal use of controlled substances, today this Court concludes that the CSA is merely concerned with fighting “ ‘drug abuse’ ” and only insofar as that abuse leads to “addiction or abnormal effects on the nervous system.”[1] Ante, at 273.
The majority’s newfound understanding of the CSA as a statute of limited reach is all the more puzzling because it rests upon constitutional principles that the majority of the Court rejected in Raich. Notwithstanding the States’ “ ‘traditional police powers to define the criminal law and to protect the health, safety, and welfare of their citizens,’ ” 545 U. S., at 30, n, 38, the Raich majority concluded that the CSA applied to the intrastate possession of marijuana for medicinal purposes authorized by California law because “Congress could have rationally” concluded that such an application was necessary to the regulation of the “larger interstate marijuana market.” Id., at 30, 32. Here, by contrast, the major *301 ity’s restrictive interpretation of the CSA is based in no small part on “the structure and limitations of federalism, which allow the States ‘“great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.’”” Ante, at 270 (quoting Medtronic, Inc. v. Lohr, 518 U. S. 470, 475 (1996), in turn quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U. S. 724, 756 (1985)). According to the majority, these “background principles of our federal system . . . belie the notion that Congress would use ... an obscure grant of authority to regulate areas traditionally supervised by the States’ police power.” Ante, at 274.
Of course there is nothing “obscure” about the CSA’s grant of authority to the Attorney General. Ante, p. 275 (Scalia, J., dissenting). And, the Attorney General’s conclusion that the CSA prohibits the States from authorizing physician assisted suicide is admittedly “at least reasonable,” ante, at 272 (opinion of the Court), and is therefore entitled to deference. Ante, at 284-285 (Scalia, J., dissenting). While the scope of the CSA and the Attorney General’s power thereunder are sweeping, and perhaps troubling, such expansive federal legislation and broad grants of authority to administrative agencies are merely the inevitable and inexorable consequence of this Court’s Commerce Clause and separation-of-powers jurisprudence. See, e. g., Raich, supra; Whitman v. American Trucking Assns., Inc., 531 U. S. 457 (2001).
I agree with limiting the applications of the CSA in a manner consistent with the principles of federalism and our constitutional structure. Raich, supra, at 74 (THOMAS, J., dissenting); cf. Whitman, supra, at 486-487 (Thomas, J., concurring) (noting constitutional concerns with broad delegations of authority to administrative agencies). But that is now water over the dam. The relevance of such considerations was at its zenith in Raich, when we considered whether the CSA could be applied to the intrastate possession of a controlled substance consistent with the limited federal pow *302 ers enumerated by the Constitution. Such considerations have little, if any, relevance where, as here, we are merely presented with a question of statutory interpretation, and not the extent of constitutionally permissible federal power. This is particularly true where, as here, we are interpreting broad, straightforward language within a statutory framework that a majority of this Court has concluded is so comprehensive that it necessarily nullifies the States’ “ ‘traditional... powers ... to protect the health, safety, and welfare of their citizens;’ ”[2] Raich, supra, at 30, n. 38. The Court’s reliance upon the constitutional principles that it rejected in Raich — albeit under the guise of statutory interpretation — is perplexing to say the least. Accordingly, I respectfully dissent.

 The majority does not expressly address whether the ingestion of a quantity of drugs that is sufficient to cause death has an “abnormal effec[t] on the nervous system,” ante, at 273, though it implicitly rejects such a conclusion.

 Notably, respondents have not seriously pressed a constitutional claim here, conceding at oral argument that their “point is not necessarily that [the CSA] would be unconstitutional.” Tr. of Oral Arg. 44. In any event, to the extent respondents do present a constitutional claim, they do so solely within the framework of Raich. Framed in this manner, the claim must fail. The respondents in Raich were “local growers and users of state-authorized, medical marijuana,” who stood “outside the interstate drug market” and possessed “ ‘medicinal marijuana... not intended for... the stream of commerce.’ ” 545 U. S., at 62, 72 (Thomas, J., dissenting). Here, by contrast, the respondent-physicians are active participants in the interstate controlled substances market, and the drugs they prescribe for assisting suicide have likely traveled in interstate commerce. If the respondents in Raich could not sustain a constitutional claim, then a fortiori respondents here cannot sustain one. Respondents’ acceptance of Raich forecloses their constitutional challenge.